UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**STANLEY WATKINS,**

    **Plaintiff,**

v.

**COLUMBUS CITY SCHOOLS,**

    **Defendant.**

Case No. 2:19-cv-394
**CHIEF JUDGE EDMUND A. SARGUS, JR.**
**Chief Magistrate Judge Elizabeth P. Deavers**

### OPINION AND ORDER

This matter is before the Court on Defendant Columbus City Schools District's (the "Board") *Motion to Dismiss* (ECF No. 4), Plaintiff Stanley Watkins' ("Watkins") *Memorandum Contra* (ECF No. 7), and the Board's *Reply* (ECF No. 7) and *Motion to Strike Plaintiff's Surreply or, in the Alternative, Motion for Leave to File a Response* (ECF No. 11). For the reasons set forth below, the Court **DENIES** the Board's *Motion to Dismiss* (ECF No. 4) and **DENIES as MOOT** the Board's *Motion to Strike Plaintiff's Surreply* (ECF No. 11).

### I.

On February 6, 2019, Watkins, proceeding *pro se*, initiated this lawsuit nearly three years after the Board terminated his one-year contract as a special-needs kindergarten teacher. Watkins alleges the Board failed to properly notify him about his pre-disciplinary hearing, which violated his due process rights under 42 U.S.C. § 1983. (Pl.'s Compl. at ¶ 31 [ECF No. 1].)

**A. Factual Background**

Watkins worked for the Board as a special education kindergarten teacher from August to October 2015. During this time, the Board became concerned Watkins was unable to teach or control his class, maintain professional relationships with his teaching assistants, or ensure the

safety of his seven disabled kindergarten students. In addition to those concerns, on several occasions Watkins was observed sleeping in his classroom while he was responsible for his students' care. On October 28, 2015, the Board removed Watkins from the classroom setting due to allegedly restraining a student in an improper manner.

Watkins' removal prompted a pre-disciplinary hearing. On December 7, 2015, the Board sent Watkins a letter (the "Hearing Notice Letter"), which notified him of the pre-disciplinary hearing that was scheduled for December 16, 2015. The Hearing Notice Letter listed the Board's allegations against Watkins, as follows:

> The reason for this [assignment] hearing is: it is alleged in the course of his position of [mentally disabled] kindergarten teacher, Stanley Watkins, on 10/26/15, violated the Board's Restraint and Seclusion Policy by implementing restraint and seclusion of a kindergarten student .... The following are allegations regarding Mr. Watkins's performance in the classroom: 1. Inappropriate student physical interventions; 2. Failure to exhibit / document planning instruction and to direct the teaching-learning process; 3. After being directed by assigned mentor to not restrain children, Mr. Watkins continues such; 4. Falling asleep in the classroom during the supervision of [mentally disabled] children; 5. Exhibiting ineffective / negative interpersonal communication with staff; 6. Ineffective classroom. Furthermore, it is alleged that his professional conduct has created an unsafe classroom containing multiple disability children.

(Pl.'s Compl., Ex. A [ECF No. 1].)

At the December 16, 2015 pre-disciplinary hearing, a union representative and two union attorneys represented Watkins. The Board heard testimony from witnesses and reviewed documents. (*See* Def.'s Mot. to Dismiss, Ex. C [ECF No. 4-3].)

On April 19, 2016, the Board notified Watkins that his alleged misconduct "is wholly contrary to his responsibilities, duties and obligations as a teacher" and therefore the Board would initiate termination proceedings. (*See* Def.'s Mot. to Dismiss, Ex. A [ECF No. 4-1].) The Board

2

stated that the grounds for termination—"each of which is asserted independent of, and/or in combination with, the other grounds"—were as follows:

> 1. On or about October 6, 2015, while charged with the responsibility of performing duties as a classroom teacher of kindergarten students with multiple disabilities, Stanley Watkins was observed seated in a chair in the corner of his classroom for at least twenty minutes, motionless with his eyes closed while apparently asleep. On several other occasions between August 26, 2015 and October 28, 2015, two classroom instructional assistants also observed Stanley Watkins apparently asleep in the classroom. During the same time period, the building principal observed Stanley Watkins apparently asleep during a staff meeting and during a professional development meeting.
>
> 2. On several occasions between August 26, 2015 and October 28, 2015, Stanley Watkins displayed negative and/or ineffective interpersonal communication with other staff, including but not limited to the Fairwood Alternative School Music Specialist and classroom instructional assistants, and students.
>
> 3. During the time period of August 26, 2015 through October 28, 2015, Stanley Watkins failed to demonstrate and document adequate instructional planning relating to the general education curriculum as well as the individual needs of the students as required by their individualized education programs. Stanley Watkins also failed to direct the teaching and learning process within the classroom as it related to students and staff which resulted in an unproductive and unsafe learning environment.

(*Id.* at 1–2.)

Watkins then requested a hearing before a referee, pursuant to Ohio Revised Code Section 3319.16. (Def.'s Mot. to Dismiss, Ex. B at 2 [ECF No. 4-2].) Prior to the hearing, Watkins had been represented by counsel. (*Id.*) After his attorneys resigned on January 6, 2017, however, Watkins chose to represent himself. The hearing before the referee commenced on March 6, 2017, and lasted 11 days. The parties collectively called 14 witnesses and presented 71 exhibits. (*Id.*)

On June 8, 2017, the referee published a 17-page Report, which recommended that the Board terminate Watkins' contract. (*Id.*) The referee concluded that "Watkins' actions as set forth in the three enumerated grounds of the [Board's] resolution, when taken as a whole, clearly are

3

serious matters and constitute other good and just cause justifying termination of his limited contract as set forth under O.R.C. § 3319.16." (*Id.* at 17.) Based on the referee's Report, the Board terminated Watkins' employment, effective June 20, 2017. (*See* Def.'s Mot. to Dismiss, Ex. D [ECF No. 4-4].)

Pursuant to Section 3319.16, Watkins then petitioned the Franklin County Common Pleas Court to review the Board's decision and determine if "substantial and credible evidence" supported the allegations. To that end, Watkins alleged 27 errors by the Board, including the violation of Watkins' procedural due process rights, specifically those required by the *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). (*See* Def.'s Mot. to Dismiss, Ex. E [ECF No. 4-5].) For example, Watkins asserted the following assignments of error:

> 10.) The Resolution fails as to specificity and violates *Loudermill* [because] the Resolution falsely states, "P.1 Mr. Watkins has been informed of the charges against him as alleged below, and has been afforded an opportunity to respond to such charges."
>
> 11.) The hearing officer erred to the prejudice of Defendant-Appellant in overruling Defendant's motion to dismiss because Defendant was not given a proper *Loudermill* termination letter.
>
> ....
>
> 14.) The hearing officer erred to the prejudice of Defendant-Appellant by disregarding the fact that the Board Resolution does not match any prior letter that Watkins received.

(Def.'s Mot. to Dismiss, Ex. G [ECF No. 4-7].)

Upon reviewing those assignments of errors, the Franklin County Court of Common Pleas concluded that "Plaintiff was provided notice and full due process regarding his termination." (*See* Def.'s Mot. to Dismiss, Ex. F [ECF No. 4-6, PAGEID: 116].)

Watkins appealed to the Tenth District Court of Appeals. In his appellate brief, Watkins raised 12 assignments of errors, which again included his claims that the previous decision

4

misapplied *Loudermill*. The Tenth District addressed Watkins' "numerous claimed errors by overruling all of them en masse because [there is] no evidence in the record that the common pleas court" abused its discretion. (Def.'s Mot. to Dismiss, Ex. K at 6 [ECF No. 4-12].)

On October 29, 2018, Watkins filed a Notice of Appeal to the Supreme Court of Ohio. (*See* Def.'s Mot. to Dismiss, Ex. M [ECF No. 4-13].) On January 23, 2019, the Supreme Court summarily declined to exercise its jurisdiction over Watkins' appeal. (*See* Def.'s Mot. to Dismiss, Ex. N [ECF No. 4-14].) Watkins filed this lawsuit on February 6, 2019.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (clarifying plausibility standard articulated in *Twombly*). Further, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Twombly*, 550 U.S. at 55) (internal quotations omitted).

# III.

**A. The Court Can Review the Parties' Exhibits When Addressing This Motion to Dismiss.**

As an initial matter, the Court notes that it can consider the parties' exhibits when addressing the Board's motion to dismiss without converting that motion to one for summary judgment. Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Sixth Circuit has noted, however, that "there are exceptions to the general rule." *J.P. Silverton Indus. L.P. v. Sohm*, 243 Fed. Appx. 82, 86–87 (6th Cir. 2007) (quotation marks and citation omitted). Without converting a motion to dismiss, "courts may consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." *Id.* at 87 (quoting *Jackson v. City of Columbus*, 194 F.3d at 745). Watkins submitted two exhibits with his complaint, both of which were public records and letter decisions of governmental agencies. Additionally, the Board submitted 14 supporting exhibits with its motion to dismiss, all of which were public records. Accordingly, the Court can consider those exhibits without converting the Board's motion to dismiss into a motion for summary judgment.

**B. The Prior Proceedings Do Not Preclude Watkins' Section 1983 Claim.**

The Board argues that the Court must dismiss Watkins' complaint under Rule 12(b)(6) because his Section 1983 claim is barred under the doctrine of res judicata. In the Board's view, the Section 3319.16 statutory hearing, referee's report and recommendation, the Board's resolution accepting that recommendation, the Franklin County Court of Common Pleas' opinion affirming the resolution, and the Tenth District Court of Appeal's affirming opinion, preclude Watkins' Section 1983 claim because the administrative proceedings afforded the parties ample

6

opportunity to litigate the issues in this case and those issues have been decided. Therefore, the issue before the Court is what preclusive effect, if any, the conclusions of Watkins' state administrative proceedings have on this case.

In *University of Tennessee v. Elliott*, 478 U.S. 788 (1986), the Supreme Court determined that factual determinations of state administrative agencies are entitled to preclusive effect in Section 1983 claims subsequently filed in federal court. In that case, Elliott requested an administrative hearing after learning that he would be discharged for misconduct and inadequate work performance. Concomitantly, Elliott filed suit in federal court, claiming his pending termination was racially motived. Ultimately, the administrative proceedings concluded that the University's decision to terminate Elliott was not racially motivated. Instead of seeking review of that administrative decision, Elliott pursued his civil rights claims in his federal lawsuit. There, the district court found that the administrative ruling was entitled to preclusive effect on his federal claims. The Sixth Circuit reversed, finding that federal courts are not bound by unreviewed findings of state administrative agencies. The Supreme Court then affirmed in part and reversed in part, holding that, "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," federal courts addressing civil rights claims "must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Elliott*, 478 U.S. at 789.

Interpreting *Elliott*, the Sixth Circuit developed a three-part test to determine whether a state administrative agency's decision is entitled to preclusive effect in a subsequent federal action. *Nelson v. Jefferson Cnty.*, 863 F.2d 18, 19 (6th Cir. 1988). First, the Court must determine whether the agency acted in a "judicial capacity," meaning it: heard evidence, afforded the parties an opportunity to brief and argue their positions, and provided an opportunity for court review of

7

adverse findings. *Id.* Second, the Court must determine whether the agency's decision would have a preclusive effect under Ohio law. *Id.* Third, the Court must decide whether "the federal action seek[s] to litigate issues already determine by the state agency." *Id.*

With respect to the first prong of *Nelson*, it is well-established that Section 3319.16 state administrative proceedings are judicial in nature. *Featherstone v. Columbus Pub. Sch.*, 39 F. Supp. 2d 1020, 1023 (S.D. Ohio 1999). Therefore, that prong is satisfied.

Relevant to the second and third *Nelson* prongs, the Supreme Court of Ohio has summarized the doctrine of res judicata in Ohio, as follows:

> The doctrine of issue preclusion, also known as collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different. While the merger and bar aspects of *res judicata* have the effect of precluding the relitigation of the same cause of action, the collateral estoppel aspect precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action that was based on a different cause of action. In short, under the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit.

*Fort Frye Teachers Assn. OEA/NEA v. State Emp't Relations Bd.*, 692 N.E.2d 140, 144 (Ohio 1998) (quotation marks and citations omitted).

To determine whether prior state proceedings are entitled to preclusive effect in subsequent federal actions, the Court must find the issues addressed during those prior proceedings. To help, the following is a brief overview of the relevant state administrative proceedings.

Section 3319.16 provides that "[t]he contract of any teacher employed by the board of education of any city ... school district may not be terminated except for good and just cause." Ohio Rev. C. § 3319.16. When a school board terminates a teacher's contract, the teacher may

8

appeal the board's decision to a referee. After the referee conducts a hearing, she issues a report and recommendation. The board may adopt or reject the referee's recommendation. If a board adopts the recommendation and fires the teacher, then the teacher may appeal the board's decision by filing a complaint in a court of common pleas, alleging the facts "upon which the teacher relies for a reversal or modification of such order of termination of contract." *Id.* Although the common pleas court does not review the board's decision *de novo*, Section 3319.16 empowers the court to weigh the evidence, hold additional hearings (if necessary), and to render factual determinations. A common pleas court may reverse a board's decision to terminate "only where it finds that the order is not supported by or is against the weight of the evidence." *Kitchen v. Bd. of Edn. Of Fairfield City School Dist.*, 12th Dist. No. CA2006-09-234, 2007-Ohio-2846, ¶ 17 (citation omitted). Further, if a teacher appeals a common pleas court's decision, then the appellate court's review is "extremely narrow" and "strictly limited to a determination of whether the common pleas court abused its discretion." *Badertscher v. Liberty-Benton School Dist. Bd. of Edn.*, 3d Dist. No. 5-14-27, 2015-Ohio-1422, ¶ 36.

Upon reviewing the Board's decision and the subsequent affirming opinions, the Court is not persuaded that the Section 3319.16 proceedings preclude Watkins' Section 1983 claim because those prior proceedings never addressed issues relevant to that claim. While Watkins asserted due process violations as assignments of errors in his appellate briefs filed with the Franklin Country Court of Commons Pleas and then the Tenth District Court of Appeals, those legal arguments were not "actually and directly at issue" during the statutory hearing or the appeals, nor were Watkins' due process arguments "passed upon and determined" by the referee. That is because the narrow review created by Section 3319.16 does not encompass alleged procedural errors or civil rights violations. The record illustrates that the Board agrees with this conclusion.

When Watkins argued to the Tenth District Court of Appeals that the Board violated Section 1983, the Board responded, as follows:

> It is not clear as to Appellant's issue regarding this claim because only one statement is included in his brief. However, this Court, which is hearing an administrative appeal[,] is not the correct venue to decide a previously undecided allegation of a civil rights violation under 42 U.S.C. § 1983.

(Def.'s Mot. to Dismiss, Ex. J at 28 [ECF No. 4-11].) So, by the Board's own admission, the only issue before the referee and the reviewing courts was whether the evidence presented at the hearing supported the Board's three allegations and therefore individually and collectively established good and just cause for terminating Watkins' employment. Upon addressing those issues, the referee and reviewing courts affirmed the Board's findings. They did not, however, address any factual or legal issues regarding Watkins' due process allegations or Section 1983 claim. Therefore, Watkins' administrative proceedings are not entitled to any preclusive effect on his Section 1983 claim in this lawsuit.

This conclusion, however, does not mean that specific fact findings made in the Section 3319.16 hearing may be disputed or relitigated by the parties in this action. *See Elliott*, 478 U.S. at 799; *see also Fort Frye Teachers Assn.*, 692 N.E.2d at 144. To the extent that specific facts determined in the prior proceedings are relevant to Watkins' Section 1983 claim, the parties cannot relitigate those facts in this lawsuit.

## IV.

Next, the Board asserts that Watkins improperly filed a surreply on May 29, 2019. Based on the docket, however, Watkins never filed a surreply. Therefore, the Court did not consider any surreply when addressing the Board's motion to dismiss. Accordingly, the Board's motion to strike the surreply is moot.

## V.

In conclusion, the Court **DENIES** the Board's *Motion to Dismiss* (ECF No. 4) and **DENIES as MOOT** the Board's *Motion to Strike Plaintiff's Surreply* (ECF No. 11).

**IT IS SO ORDERED.**

_____6-27-2019_____  
**DATE**

_____  
EDMUND A. SARGUS, JR.  
CHIEF UNITED STATES DISTRICT JUDGE